### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**BLESSEY MARINE SERVICES, INC.**
      **Plaintiff,**

**Versus**

**PONDEROSA PETROLEUM
COMPANY, INC.**
      **Defendant.**

### COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes plaintiff, Blessey

Marine Services, Inc. ("Blessey"), and who for the purposes of the above-entitled and

numbered action, respectfully represents as follows:

### THE PARTIES

1. Plaintiff, Blessey Marine Services, Inc. ("Blessey"), is a Louisiana corporation

   with its principal place of business in Harahan, Louisiana.  Blessey is engaged in

   the transportation of liquefied petroleum products on inland waterways

   throughout the coast of the Gulf of Mexico as well as the Mississippi and Ohio

   River valleys.

2. Defendant, Ponderosa Petroleum Company, Inc. ("Ponderosa"), is a corporation

   domiciled in the State of Kansas, with its principle place of business believed to

   be 12753 Parker Road, Suite 200, Parker, Colorado 80134.  Ponderosa is engaged

   in the marketing and transportation of residual oils, asphalts, carbon black oil, and

other refinery feedstocks throughout the United States as well as Canada and Mexico. Ponderosa's registered agent for service of process, as on-file with the Secretary of State for the State of Kansas, is Mr. David James, 305 S. 5th Street, Phillipsburg, Kansas 67661.

## VENUE AND JURISDICTION

3. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332, because there is complete diversity of citizenship between Blessey and Ponderosa and the amount-in-controversy exceeds US$75,000.00.

4. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1333 and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

5. This Court has personal jurisdiction over Ponderosa pursuant to the Louisiana long-arm statute, LA-R.S. 13:3201, *et seq*., as Ponderosa conducts and transacts business in this state.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claim took place in this district. Furthermore, the Contract between the Blessey and Ponderosa was executed in this district and the subject carriage of cargo traversed navigable waterways in this district.

7. Additionally, Section 40 of the Contract of Affreightment, Part II, between Blessey and Ponderosa states,

> **APPLICABLE LAW AND VENUE:**    This Contract shall be governed by the General Maritime Law of the United States. Carrier and Shipper agree that any litigation

that might arise concerning this contract and/or the activities governed hereby shall be brought in the Louisiana State Courts of Jefferson Parish, Louisiana or in the United States District Court for the Eastern District of Louisiana in New Orleans, Louisiana.

## BACKGROUND AND FACTS

8. On or about June 4, 2010, Blessey, as carrier, and Ponderosa, as shipper, (collectively "the parties") entered into a Contract of Affreightment (the "Contract") for the transportation of certain petroleum products in bulk from Lemont, Illinois to Texas City, Texas.

9. Blessey hereby references the terms and conditions of the Contract as the best evidence of the agreement between the parties and also as if the terms and conditions are copied herein *in extenso*.

10. Thereafter, Blessey tendered barges WEB223 and WEB250 to Ponderosa at Lemont, Illinois for loading of cargo vacuum tower bottoms ("VTB's").

11. Between June 4 and June 6, 2010, Ponderosa loaded barges WEB223 and WEB250 with cargo VTB's bound for Texas City, Texas, said loading evidencing acceptance of barge WEB223 and WEB250 by Ponderosa, as it was shipper's sole discretion to inspect the barges prior to loading pursuant to the Contract.

12. During loading, Blessey incurred approximately 12.57 hours of demurrage, payable by Ponderosa to Blessey at the rate of US$375.00 per hour pursuant to the terms and conditions of the Contract.

13. Barges WEB223 and WEB250 arrived in the vicinity of Texas City, Texas, without incident during inland river transit, during the late-afternoon hours on June 15, 2010.

14. On June 16, 2010, Blessey commenced discharge of barge WEB250 at approximately 0840 hours LT at Texas City dock number 16. However, dock officials would not permit Blessey to discharge more than one barge at a time and would not permit heating of the VTB's at the dock.

15. Blessey was then ordered to leave the dock with barges WEB223 and WEB250 by dock officials despite open dock space at dock number 16.

16. At approximately 0515 hours on June 18, 2010, Blessey berthed at dock number 15 and resumed discharge of barge WEB250, which discharging completed at roughly 1105 hours.

17. Blessey departed dock number 15 at 1800 hours on June 18, 2010 with barge WEB223 waiting on orders from dock officials to resume discharge.

18. At approximately 0105 hours on June 26, 2010, Blessey berthed at dock number 15 and resumed discharge of barge WEB223, which discharging completed at approximately 1855 hours on June 26, 2010.

19. During discharge at Texas City, Blessey incurred approximately 202.65 hours of demurrage, payable by Ponderosa to Blessey at the rate of US$375.00 per hour pursuant to the terms and conditions of the Contract.

#### A.     Fleeting Expenses

20. On or about June 27, 2010 and June 28, 2010, Blessey provided barge fleeting ("barge fleeting services") for barge WEB223 necessary for and on behalf of Ponderosa.

21. The barge fleeting services were completed pursuant to the Contract between the parties, and accordingly bind the defendant for payment.

22. In providing the aforementioned barge fleeting services, Blessey relied on the credit of Ponderosa.

23. On July 16, 2010, Blessey issued Invoice No. 197760 for the services rendered in the sum of US$270.00 (TWO HUNDRED SEVENTY DOLLARS AND NO/00s), payable upon receipt.

24. Despite passage of the due date for Invoice No. 197760, and amicable demand for payment sent by way of Certified Mail dated October 5, 2010, full payment has not been received, with the balance of US$270.00, excluding interest and fees, due and outstanding.

**B.   Tankerman Expenses**

25. On or about June 15, 2010 and June 16, 2010, Blessey provided tankerman services ("tankerman services") for barge WEB223 necessary for and on behalf of Ponderosa.

26. The tankerman services were completed pursuant to the Contract between the parties, and accordingly bind the defendant for payment.

27. In providing the aforementioned tankerman services, Blessey relied on the credit of Ponderosa.

28. On July 28, 2010, Blessey issued Invoice No. 198156 for the services rendered in the sum of US$1,548.50 (ONE THOUSAND FIVE HUNDRED FORTY-EIGHT DOLLARS AND 50/00s), payable upon receipt.

29. Despite passage of the due date for Invoice No. 198156, and amicable demand for payment sent by way of Certified Mail dated October 5, 2010, full payment has not been received, with the balance of US$1,548.50, excluding interest and fees, due and outstanding.

### C.   Demurrage Expenses

30. On or about June 4, 2010 through June 6, 2010, Blessey provided barging ("barging services") for barges WEB223 and WEB250 necessary for and on behalf of Ponderosa.

31. The barging services were completed pursuant to the Contract between the parties, and accordingly bind the defendant for payment.

32. During loading of the barges at Lemont, Illinois beginning on or about June 4, 2010, and through no fault of Blessey, Blessey incurred demurrage in the amount of US$4,713.75 pursuant to the terms and conditions of the Contract.

33. In providing the aforementioned barging services, Blessey relied on the credit of Ponderosa.

34. On or about June 15, 2010 through June 26, 2010, Blessey provided barging ("barging services") for barges WEB223 and WEB250 necessary for and on behalf of Ponderosa.

35. The barging services were completed pursuant to the Contract between the parties, and accordingly bind the defendant for payment.

36. During discharge of the barges at Texas City, Texas beginning on or about June 15, 2010 through June 26, 2010 and through no fault of Blessey, Blessey incurred

demurrage in the amount of US$75,993.75 pursuant to the terms and conditions of the Contract.

37. In providing the aforementioned barging services, Blessey relied on the credit of Ponderosa.

38. On July 30, 2010, Blessey issued Invoice No. 198313 for the total demurrage incurred in the sum of US$80,707.50 (EIGHTY THOUSAND SEVEN HUNDRED SEVEN DOLLARS AND 50/00s), payable upon receipt.

39. Despite passage of the due date for Invoice No. 198313, and amicable demand for payment sent by way of Certified Mail dated October 5, 2010, full payment has not been received, with the balance of US$80,707.50, excluding interest and fees, due and outstanding.

### D.   Fuel and Fuel Tax Expenses

40. On or about June 4, 2010 through June 26, 2010, Blessey provided barging ("barging services") for barges WEB223 and WEB250 necessary for and on behalf of Ponderosa.

41. The barging services were completed pursuant to the Contract between the parties, and accordingly bind the defendant for payment.

42. During the aforementioned barging services, Blessey incurred fuel and fuel tax charges in the amount of US$31,534.03, which is owed to Blessey pursuant to the Contract.

43. In providing the aforementioned barging services, Blessey relied on the credit of Ponderosa.

44. On July 30, 2010, Blessey issued Invoice No. 198314 for the services rendered in the sum of US$31,534.03 (THIRTY-ONE THOUSAND FIVE HUNDRED THIRTY-FOUR DOLLARS AND 03/00s), payable upon receipt.

45. Despite passage of the due date for Invoice No. 198314, and amicable demand for payment sent by way of Certified Mail dated October 5, 2010, full payment has not been received, with the balance of US$31,534.03, excluding interest and fees, due and outstanding.

46. The total amount due and outstanding to Blessey for barging services described above is US$114,060.03 (ONE HUNDRED FOURTEEN THOUSAND SIXTY DOLLARS AND 03/00s).

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT – OPEN ACCOUNT**

47. Blessey repeats and re-alleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

48. Despite amicable demand made on or about October 5, 2010 in accord with Louisiana Revised Statute 9:2781, defendant has failed to pay the US$114,060.03 (ONE HUNDRED FOURTEEN THOUSAND SIXTY DOLLARS AND 03/00s) balance due thereon.

49. Pursuant to Louisiana Revised Statute 9:2781, in the event the defendant does not pay plaintiff the US$114,060.03 (ONE HUNDRED FOURTEEN THOUSAND SIXTY DOLLARS AND 03/00s) balance within thirty (30) days after written demand, the plaintiff in entitled to recover attorney's fees in the prosecution of outstanding sums owed.

50. As a direct and proximate result of defendant's willful and wanton disregard and failure to pay the US$114,060.03 (ONE HUNDRED FOURTEEN THOUSAND SIXTY DOLLARS AND 03/00s) balance due thereon, plaintiff suffered damages as set forth herein.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT – BREACH OF CONTRACT

51. Blessey repeats and re-alleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

52. Despite amicable demand, Ponderosa has refused to pay the US$114,060.03 (ONE HUNDRED FOURTEEN THOUSAND SIXTY DOLLARS AND 03/00s) balance due thereon.

53. Ponderosa has breached its Contract with Blessey, as Ponderosa has willfully withheld sums due pursuant to the Contract between the parties.

54. As a direct and proximate result of Ponderosa's breach of the Contract between the parties, Blessey has suffered damages as set forth herein.

## ATTORNEY'S FEES, INTEREST, AND COSTS

55. Blessey repeats and re-alleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

56. Pursuant to Section 36 of the Contract of Affreightment, Part II,

> **ATTORNEY'S FEES:**     Should it become necessary for either Carrier or Shipper to employee [sic] counsel to enforce any right or obligation under this contract, the breaching party to the contract hereby agrees to pay all reasonable attorneys fees, costs, and other expenses of the non-breaching party to the contract.

57. Accordingly, Blessey is due all attorney's fees and costs incurred in enforcing collection of all outstanding invoices issued pursuant to the Contract.

58. Pursuant to Section 37 of the Contract of Affreightment, Part II,

> **INTEREST:** Interest shall be payable on all bills that are past due at 1 ½ % per month pro-rated daily.

59. Accordingly, Blessey is due interest on all outstanding sums at the rate agreed in the Contract.

## PRAYER FOR RELIEF

**WHEREFORE**, Blessey Marine Services, Inc. prays that this Complaint be deemed good and sufficient after due proceedings are had, that this Court enter judgment in its favor awarding Blessey Marine Services, Inc. all foreseeable and unforeseeable damages including US$114,060.03 (ONE HUNDRED FOURTEEN THOUSAND SIXTY DOLLARS AND 03/00s), together with damages pursuant to Louisiana Revised Statute 9:2781, including but not limited to court costs, expenses, and attorney's fees, as well as judicial interest and all other legal, general, and equitable relief to which Blessey Marine Services, Inc. is entitled.

Respectfully submitted,

Thomas J. Bethune IV (LSBA 28313), T.A.
1515 River Oaks Rd. East
Harahan, Louisiana 70123
Telephone: (504) 734-1156
Facsimile: (504) 734-2903
bbethune@blessey.com
**Counsel for plaintiff, Blessey Marine Services, Inc.**

**PLEASE WITHHOLD SUMMONS PURSUANT
TO THE LOUISIANA LONG-ARM STATUTE TO:**

David James
As Registered Agent for Service for
Ponderosa Petroleum Company, Inc.
305 S. 5th Street
Phillipsburg, Kansas 67661

11